Our final case this morning is ARENA IP v. New England Patriots, 2024-1750. Mr. Ramey. Good morning, my name is William Ramey and I represent ARENA IP, LLC and if it pleases the court may I begin. ARENA is asking the court to reverse the district court's finding that the claims of the 820 patent were directed to patent ineligible subject matter. The district court order made this determination based on what we believe is a misapprehension of the focus of the claims and a failure to consider the actual claimed elements. There simply is nothing abstract about self-contained pods that can enable video and data communications with multiple wireless handheld devices. Those are physical devices, those are actual claim devices, this is a system claim. All the independent claims of the 820 patent. Our court has held that even system claims that have physical structure can be directed to abstract ideas and ineligible under ALICE where the claim doesn't say you know more about how to solve a technical issue, a technical problem, or somehow improve upon the hardware or software and instead is just at a high level of I want to do this and I want to do that, as in I want to have all these pods that will allow people to be able to use Wi-Fi in a stadium environment, right? Yes, Your Honor, I think that the claims could be drafted in such a way that they could be patent ineligible but these claims, these claims claim meaningful limitations that take it out of that ineligible area. They don't preempt all communications. Let's go to what the patent actually talks about. The 820 patent, this is appendix 0030 at column 3, lines 35 to 45. It talks about what it does differently. The systems that were building wireless access points in the near term, in the recent years, were building land, they had hardwired wireless access points in there. That's when they built the stadiums. This, the claimed invention, are for these self-contained pods that could be put into stadiums without drilling new holes or pulling wire to run all the land equipment. So these are these are not wired wireless access points or wireless wireless access. It's the wireless aspect that makes this different, you think, or makes this so that it's not directed to an abstract idea. Correct, Your Honor, that's that would that would be one of the points and the claimed elements in there and if we go I guess let's just go straight to the claims if that's okay. The here, you know, this the we believe the preamble is limiting. We didn't get to claim construction in the case but we believe the preamble is limiting because the claim terms used are referred to in the body and so it's grabbing antecedent basins from the preamble. So we start off with a system providing communications capacity so it's claiming something that provides enhanced video and data capacity supporting video and data and it's a wire with wireless devices and then it goes through and then the next element is at least one server managing data. It's limited by what it's doing. It's managing the video coming back from video cameras at the venue. Then we go down to the to one or more than one self-contained pod and it includes certain elements. It includes wireless communications electronics and an antenna and the self-contained pod it operates as a wireless access point sustaining bidirectional communication with that at least one server and then more than that it's further limited that that self-contained pod there's more than one of them they're deployed as a matrix of communication nodes throughout the venue to provide that going back to what the preamble calls that enhance uh capacity for for data transfer and then so it allows video data transfer back and forth from wireless handheld devices through a wireless device and if we go to back to what the patent was talking about what it's talking about is it's talking about what existed at the time of this invention people would build a stadium put in wireless access point pull the wires now this is a solution around these kinds of wireless pods or wireless devices they existed this is not new technology right that's correct well the wireless devices did exist there was a wireless access point but here if you go back to what the examiner said is reasons for allowance can put putting the pods together in a matrix like wait to hear what was done by the patentee the matrix was did not exist the patent the examiner found that exactly is the reason for allowance and that can be found at appendix 0116 that was specifically and of course this even gets more basic going back to dismissal in a 12b6 motion in the first amendment complaint at appendix 0079 and 0078 we reference the in the reasons the reasons for allowance is one of the reasons why the patent is patent eligible at the pleading stage and so that was a factual assertion we made that the district court did not consider and we believe that's one of the reasons why at the pleading stage this should be reversed and sent back for investigation into whether or not those factual assertions made by the patentee in the in the pleading are sufficient to sustain patent eligibility how do the patents in affinity labs and charge point get past section or not get past section 101 whereas you say that your patent does yes sure thank you for that the affinity labs was was found patentable because it claimed a proposition of our concept of uh of providing out of market uh regional access to broadcast material right and then so it was not tethered to a specific or concrete way of doing it i believe the court in that this court in that case said that had it been tethered to a specific means or method it might have been patentable but because it wasn't tethered to a specific means it wasn't patentable in our case we don't believe the claims are abstract to start with but even if we're there we believe there's discrete claim elements that i walked this work through a few minutes ago are enough to take it out of the ineligible realm and put it back in the eligible realm because the fear of preemption isn't there you can still construct wireless access points that would not read on these claims for one we disclose one of them wired wireless access points that most people are going to build when they put in a stadium these days when they do a new stadium that's what that that would not infringe these claims can i ask you a question about your claim scope um i do see where it's talking about the matrix of communication nodes but it's more than one self-contained pod deployed as a matrix of communication nodes would that include having two self-contained pods more than one more than one yes your honor it would be so two communication pods would be a matrix in a particularly small venue yes your honor i think it could it is you know we've i think we've all been to weddings and stuff where they do put these up in small venues and sometimes there's only two that would be sufficient but in if you're talking about a larger venue it's going to vary with the venue to vary what the the structures are in there and that that of course is more of a 112 issue as to what is actually covered by that would your wedding uh environment infringe this claim only if it contained all the discrete elements of their claims let's say it had everything in the claim but i'm really just trying to understand the preamble language a sports and entertainment venue that that there's other claims your honor it's not my apology so claim one it probably wouldn't uh infringe but if you go down to some of the other claims it might infringe some of the other claims claims 1 8 and 15 of the independent claims we all agree that claim one is represented for the patent eligibility test of a claim while the sports entertainment's mentioned all of them that's uh the claim 15 does more of a venue analysis that could be a broader venue yes charge point though i asked about charge point before how do you distinguish that case because i look at the patent in that case and at least that part two of or step two of the alice test not knowing the record in that case but just the case opinion it seems like it gets closer to the line as far as inventiveness yes your honor thank you for that um so my apology john i can't place that case right now in my in my head but the but generally what the differentiation that we'd say with with our claims the claims that we have in the 820 patent is that they do provide meaningful limitations to uh to providing wireless access and because it is designed for a specific problem in the art providing wireless access points to increase or enhance data and video connectivity for people in in older venues or in venues that are set up temporarily that's these these aren't hardwired in with the with the newer venues and that's that's the big differentiation well uh we think the patents are patent claims are eligible at step one the court the district court did get into step two and if i could i'd address that just briefly that the district court uh conflated what we believe is as a novelty obviousness with uh the one-on-one analysis and you can see this just by where he's uh where he uh what he cites is the basis are you looking at you want to show us exactly what you're referring to yes your honor that would be appendix 0018 so where the district court says at its core the 820 patents claim disclosed the that a system already in existence uh can be used on a larger scale such idea does not constitute an event in the concept such claims are not patent eligible that's i think that so that paragraph right there kind of summarizes everything that the district court did he would this was the error was conflating the novelty obviousness with the patent eligibility we in so we weren't we didn't do a proper eligibility analysis that there there pre-existed other environments in which wireless access points were used to extend data communication right okay pardon me your honor i didn't hear that do you agree that prior to the invention in this case prior to the filing date of this patent application or its priority date that there existed uh in other environments other than stadiums or at big entertainment venues um using wireless access points to extend data communication i think you're patented yeah i think i think there were other wireless access points that were out there yes your honor and so that was that's why if we go back to the specific limitation i don't think we can read out the the venue the sports entertainment venue from this i think that's what the the claims are limited but i do i go back to what the examiner said it is reasons for allowance that he in his search didn't find those limitations in the prior art and that's what uh we said that's what we were allowed to say that it's not conventional technology at that point and uh and at least because we put that into the first amendment complaint uh that's a factual assertion that would have to be resolved uh and if it told me six days it's not proper to resolve that without discovery into that matter but in a 12b6 stage statements that are made in this specification can be considered right statements about certain things being conventional or not conventional certainly can be considered at the 12b6 stage correct yes your honor in the in the patent specification the patent specification yes so let me let me uh go back and make sure that i cleared that because i think i understand from the from that uh from my colleagues on the other side's briefing that there may be a misapprehension on what the patent actually says is in the prior the patent does refer to what stadiums like the dallas cowboys did but that's talking about what i was talking about earlier they call them three lines 35 to 45 those are hardwired systems that's where they build a new stadium put the wireless access points in hardwired so that's it's we're not talking we weren't admitting that what we're trying to do is in the prior art we were trying to differentiate our self-contained pods for what they do in the prior art for these wireless access points this this uh invention filled a need in the industry filled you know this is a technological improvement in the area of wireless access points wireless wireless access points on top of that so it is very limited it would not preempt much at all what's your best case that supports your position what's the most analogous case that goes your way well your honor i think i like power a power block uh the most in that case as this court uh knows ultimately this court found the claims to be direct towards patent eligible because of meaningful limitations that were put in and that case of course is directed toward what might be considered automated weight stacking and the court found that because of the connection of certain motors and the way that it selected the weights the meaningful limitations that took it out of patent eligibility and back into patent eligibility we would say the same general analogy holds here what we're talking about is we're talking about wireless wireless access points but we put meaningful limitations in through those self-contained pods that were not in the art to allow this these larger venues to be covered that takes us outside of the area patent ineligibility counsel your time has mostly expired but let's hear from the other side we'll give you two minutes for a bottle thank you your honor mr bill harris good morning your honors and may it please the court alan bill harris for the new england patriots the court should affirm the district court's well-reasoned dismissal order the claims the 820 patent are directed to an abstract idea on their face providing wireless communications access in a public venue beyond that abstract idea the claims only recite generic computer components used in a conventional way thus under the now familiar alice test the claims are invalid well they claim a system uh with a server and pods there's something physical about that yes correct your honor there is something physical about servers and pods but i think judge soul may have pointed out that our case law the case law of this court indicates that having physical components alone is not enough and one thing i would like to address your honor just i heard this for the side that wireless versus wired being the distinction here between newer venues and older venues i'd like to read from the patent itself column one so this is on appendix 29 column one line 49 new sports and entertainment venues are now being designed and built to incorporate wireless data communications infrastructure in order to enhance spectator experiences it's right there in black and white that the patent acknowledges that wireless technology was already present in sports and entertainment venues at the time and you will see in columns three and four there's a long discussion there of wireless technology and how it is conventional what do you think is the best um parts of columns three and four just even a couple sentences or one sentence uh for showing that these uh wireless uh repeaters are conventional yes uh thank you uh approximately lines 40 through 45 uh that's on appendix page 30 uh and that's where the spec talks about 80211 repeaters are on the market um and they will be referred to in herein as communication systems nodes or simply as communications nodes that's the terminology that appears in the claims so the the patent is equating uh those nodes with known wireless technology it goes on and discusses further so when it talks about a self-contained pod deployed as a matrix of communications nodes that's it's referring back here to these wireless repeaters yes your honor it's referring back to at least some conventional technology um i don't know if it's actually limited to that but at least that is within the scope of what the claims cover um i would also point out to your honors of in the appendix at page 221 council for arena ip has already admitted that uh the improvement is not in the pods themselves i'll read from the appendix it's page 11 of the oral argument before the district court um i'm quoting now uh the improvement is not in any one pod and not within the ability of the improvement is having a server that communicates with multiple of these pods that's unable to transmit high capacity video and data to multiple wireless handheld devices across the sports venue that system is what is what's being claimed so it's not it's not the improvements in any one pod so we're not talking about the pods here we're talking about at best the arrangement that's how i understand their argument how many pods did the claims require the claims actually do require more than one if i'm remembering that correctly yes column eight uh so this is appendix 32 column 8 line 62 says more than one self-contained self-contained pod there could be two pods it could be two pods your honor so it's not the pods uh and now council arena ip argues that it is the arrangement of the pods uh the matrix but i would point out that the term doesn't appear anywhere in the specification there is no support uh for the matrix or the arrangement there's no discussion of how these things need to be arranged in an inventive capacity and that puts us uh squarely within uh affinity labs i think that's the this this case is on all fours with affinity labs and that you've got you've got you don't have the how you have this concept uh at best of of even taking their argument assuming that their argument is which we we disagree with but at best you have the concept of arranging these things in a matrix there's no discussion of how or what would qualify and in fact the dependent claims as well so matrix appears one time in each of the independent claims and one limitation of 102 words uh that limitation 102 words long matrix appears once in each of those the dependent claims do not elaborate on this concept at all they focus on other conventional technology so i think it defies the intrinsic record to say that uh the the matrix is the focus of this invention and under affinity labs we look to the focus of the invention to understand or to resolve alice step one should should be district court nonetheless have discussed the examiner's reasons for allowance which seem to mention the matrix um your your honor uh the i believe council talked about conflating novelty and patent subject matter eligibility uh the examiner's reasons for allowance uh were uh addressing novelty not subject matter eligibility in fact these claims were allowed two years before alice was even decided of course we had 101 at that time but the examiner was not evaluating eligibility when the examiner made that determination if our law had gone in a different direction we'd be dealing with section 103 here perhaps your honor perhaps but uh the issue before the court today is patent subject matter eligibility so i want to go back to that um that statement of the examiner i'd also point out the word matrix does literally appear in there but the examiner is pointing to that same 102 word limitation that but also point out recites the abstract idea uh which is providing wireless communications access in a public venue if you look at it it's not the exact same verbiage but that's in the limitation it's talking about providing enhanced capacity or capability for wireless communications um i can read it to the court uh the language it appears uh on 10x 33 at column nine starting at line one the claim actually literally recites to provide enhanced communications capacity for and data network access by said handheld wireless devices being used by spectators located throughout the sports and entertainment venue so the claims are reciting this concept of of providing wireless communication access in a sporting venue and i believe there were some questions before about well what if it's a wedding right the the claims are limited to a sport sports and entertainment venue at least claim one and claim eight are claim 15 is only limited to a public venue so perhaps that would read on a wedding depending on how public it is um but it's black letter law including in alice itself that you can't take an abstract idea and limit it to a particular field of use or a particular technological context and then have a patent eligible claim i asked counsel on what was his best case yes to support his position and he made reference to power block and i didn't see that case cited in any other briefing do you know what he's referring to oh thank you for that question your honor um i had the same reaction i checked the table of authorities and i did not see that case cited um i am not familiar with that case uh at least not this time so i didn't see that case cited i think it's outside the briefing your honor but in terms of the cases on point i believe affinity labs is directly on point i would also point to chamberlain um chamberlain talks about these physical claim elements not being enough to save claims from abstractness and also two-way media as well we're in this situation where we're dealing with claims that are nominally tech technological but if you strip that all away it's just claiming a concept of solving a problem and going back to counsel's statement about uh the uh the the there's a factual allegation in the specification i believe he was pointing to um the discussion in columns one and two which talks about the problem of older stadiums versus newer stadiums that let's assume for a second that it is a factual allegation properly preserved uh that's just talking about the problem it's just talking about the problem to be solved that's not actually providing an inventive concept or an invention it's just saying here's the problem uh we will the present invention solves it that's an abstract idea um your honor if i may briefly touch on the claim construction question fine it's your time okay thank you your honor well i'm it's going to be hard to beat the earlier counsel in terms of sitting down quickly so um i will say uh your honor the claim construction argument was not presented to the district court uh in the briefing before the district court that came up at oral argument it's the most superficial of arguments and that the preamble should be limiting but i point out that that doesn't change the analysis here uh the the preamble even if it were limiting the preamble just recites the same abstract idea your view is because it gives if if at most it gives the environment that as you said earlier under our case law would not be sufficient to make something that's abstract non-abstract correct your honor and and actually looking uh to claim 15 i'm i'm not sure i guess it restricts it to public venues as opposed to private venues but it's it's quite broad in terms of what it uh what it attempts to claim but that idea i would point out as we discussed earlier is recited also in the last limitation that long limitation so even if the preamble is limiting it doesn't add anything new to the analysis but then as a matter of law of course you if you limit to a particular field of user technological context it's not enough we made these arguments in our brief and arena ip failed to rebut those arguments on reply so they are unrebutted at this time with regard to the clean construction argument unless there are further questions thank you counsel thank you mr ramey has two minutes yes sir if i may uh first if i could judge and i want to apologize for charge point i did now work by refresh my recollection about that case and what it stands for and i think charge points directly on point it actually says what we're looking at the focus we're supposed to go back to the specification to find out what the specification talks about and you heard my friend on the other side bring up the fact of what of where the specification where it does talk about retrofitting old venues it talks about these pods how they didn't exist i think that's directly on point but to address i can just chamberlain the charge point and one aspect here this court my oversimplification found those claims in those two cases to be abstract because they weren't claiming the physical thing they were trying to control they were claiming controls of those so they weren't like in chamberlain that didn't claim the movable barrier the court pointed out had that been claimed it may have been different that the claims may have been eligible it claimed a status control for garage door can i ask you one quick question which is i want to ask you a quick question which is is simply where in your claim does it talk about retrofitting any sports venues i i just don't see that i think that your claim is broad enough to cover on to cover new venues as well am i wrong yes your honor i think that for the new venues it's wrong if they're wired what in your claim what in your claim suggests that this is only for retrofitting the there's not that limitation in the claims itself your honor thank you okay sorry and i wanted to address real quick the the power block case i could not have put that in the brief because it only was only issued august 11th follow rule 28 j letter i did not but uh but it's uh do next time okay but that's the the newer case but it but it also goes back to mccrow and it's it relies a lot on the um on that case in that case is in the briefing and that's in the the same for the same point and so mccrobey band-aid case is cited uh in the case so if that's the strongest case in maryland i'm dr judge i'm sorry about that um and with that i thank the court very much if you have any further questions i can thank you to both counsel the case is submitted